IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**UNITED STATES OF AMERICA**,

*Plaintiff*,

v.

**VINCENT EDWARD JONES**,

*Defendant*.

CAUSE NO. 3:23-CR-74-CWR-LGI

### ORDER

In this case, the government alleges that Vincent Edward Jones violated 18 U.S.C. § 922(g)(1) by being a felon in possession of a firearm between June 15, 2023 and July 15, 2023. Mr. Jones now seeks to dismiss the Indictment. He argues that § 922(g)(1) is unconstitutional, at least as applied to him, based on the Supreme Court's reasoning in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).

The attorneys are well-versed in the post-*Bruen* arguments for and against felon disarmament. Their respective offices litigated substantially similar issues before this Court in *United States v. Bullock*, --- F. Supp. 3d ---, 2023 WL 4232309 (S.D. Miss. June 28, 2023). That decision is presently on appeal to the Fifth Circuit.

Much of the legal analysis in *Bullock* is applicable to Mr. Jones' motion. As in *Bullock*, therefore, the Court finds that *Bruen* supersedes pre-2022 Fifth Circuit cases upholding § 922(g)(1); that the Second Amendment presumptively protects persons who seek to possess firearms; and that the government has not demonstrated a historical tradition of *permanent* felon disarmament or disarmament of *non-violent* felons. *See id.*; *see also United States v. Rahimi*,

61 F.4th 443, 450 (5th Cir. 2023) ("*Bruen* overrules our precedent"), *cert. granted,* 143 S. Ct. 2688 (2023).

Even so, those conclusions do not answer whether the government can punish Mr. Jones for possessing a firearm. His case presents a few differences. Testimony at Mr. Jones' detention hearing indicated that during the dates covered by the Indictment, one of the firearms Mr. Jones possessed was an AR-15, and he used a firearm to shoot *at* several people, striking one of them in the leg. *See* Docket No. 26-2 at 7-8. This last fact indicates that he may be dangerous.

This Court remains sympathetic to the historical-legal analysis then-Judge Barrett conducted while on the Seventh Circuit. She made a compelling case that "legislatures have the power to prohibit *dangerous* people from possessing guns." *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting) (emphasis added). If "the dispositive lens of historical disarmament" is dangerousness rather than felony status, perhaps Mr. Jones can lawfully be disarmed—maybe even permanently. *Bullock*, 2023 WL 4232309, at *28.

Yet three reasons preclude this Court from arriving at that conclusion today.

First, the government does not attempt to justify disarmament in dangerousness. The Supreme Court instructs lower courts to "follow the principle of party presentation" and decide Second Amendment challenges "based on the historical record compiled by the parties." *Bruen*, 597 U.S. at 25 n.6 (citation omitted). But the government's brief here does not present any history of disarming the dangerous. It does not even use the word.

The government, in fact, used fewer than half the pages to which it was entitled. Two pages were devoted to a string cite. And its attempt to "incorporate[] in full" all the arguments it made in a 66-page appellate brief before the Fifth Circuit would eviscerate the

page limits of the Local Rules. The government could have used any of its 18 remaining pages to a dangerousness argument. Or it could have sought leave of Court to exceed the page limits. In declining to do so, it has forfeited the argument. *See Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing, L.L.C.*, 934 F.3d 424, 426 (5th Cir. 2019).[1]

Second, the government has not proved in a court of law that Mr. Jones is dangerous. If American history and tradition support disarming the dangerous, then there must first be some adjudication of a person's dangerousness to place them on notice of their disarmament. That hasn't happened yet.

The government's brief catalogues Jones' many felony drug offenses, but those are nonviolent crimes. It then turns its focus to the events leading up to and including the present Indictment—a tale drawn from testimony at Mr. Jones' detention hearing. But we all know that the Rules of Evidence do not apply at this preliminary convening. *See* 18 U.S.C. § 3142(f). Even when the evidence has closed at trial, the accused has not been convicted. *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases) 1.05 (rev. 2019). This record cannot suffice.

Finally, even if the government had attempted to justify disarmament in dangerousness, the argument is foreclosed by precedent. In a § 922(g)(8) challenge decided earlier this year, the Fifth Circuit specifically rejected the government's claims that "English and American laws . . . providing for disarmament of 'dangerous' people" are "relevantly similar" to modern disarmament laws. *Rahimi*, 61 F.4th at 456.

---

[1] To be clear, the end of the government's brief *did* argue that Mr. Jones' recent behavior was violent. *See* Docket No. 26 at 16. This argument is not forfeited or waived. It just runs into the second problem—the government has never actually convicted Mr. Jones of a violent crime.

The government asserts that "*Rahimi*'s reasoning does not apply" because Mr. Rahimi challenged the domestic violence section of § 922(g), rather than the felon-in-possession section at issue today. Docket No. 26 at 8. *Rahimi*, though, devoted page after page to the various "'dangerousness' analogues" the government advanced to support disarmament of "violent persons." 61 F.4th at 456 (quotation marks and citation omitted). The appellate court concluded that the proffered colonial and early state laws failed *Bruen*'s "how and why" test. *Id.* at 457. Their purpose "was ostensibly the preservation of political and social order," the court explained, *not* public safety. *Id.* "While public safety was a concern, most disarmament efforts were meant to prevent armed rebellions." *Id.* (quotation marks and citation omitted).

Under *Rahimi*, then, the government could likely sustain modern laws disarming persons who had engaged in "armed rebellions," or "people thought to pose a threat to the security of the state due to their perceived lack of loyalty or societal status." *Id.* But the decision plainly found that American history does *not* support disarmament laws passed for generalized interests of "public safety." *Id.* This reasoning is fully applicable to Mr. Jones' present § 922(g)(1) charge. *See United States v. Leblanc*, --- F. Supp. 3d ---, 2023 WL 8756694, at *11 (M.D. La. Dec. 19, 2023) ("the Fifth Circuit addressed the *same* danger-based analogues advanced by the Government here, and *rejected* them as a basis for sustaining contemporary disarmament laws for reasons that are equally applicable in this case."). It will be applied.

\* \* \*

*Bruen* is the law, and as such, "history is our heuristic." *United States v. Daniels*, 77 F.4th 337, 341 (5th Cir. 2023). The Fifth Circuit instructs lower courts to "hew closely to *Bruen*'s own reasoning and hold the government to its heavy burden." *Id.* at 342. This Court does so today. The new regime will be enforced.

4

If the government cannot or will not produce history to meet *Bruen*'s terms, it will have to consider using some of its many other tools to protect public safety. Tools that do not require lawyers and judges to guess at hundreds of years of English and American history without proper training, context, or expertise.

In this case, for example, records show that local authorities have *charged* Mr. Jones with "Domestic Violence (Aggravated Assault)" and possessing a stolen firearm. It is not clear where those charges stand in the state-court system. The testimony suggests that local authorities could also pursue Mr. Jones for either participating in an armed carjacking or possessing a carjacked vehicle. Whether they will is unknown. The point is, persons who engage in dangerous conduct can be prosecuted *for that conduct*, rather than for status crimes. Certainly the State has an interest in prosecuting one who attempts to kill an ex-girlfriend and her nephew with an assault-style weapon, firing several rounds at them—*actually hitting one of them*—and leaving bullet holes all around the frame of a house. Docket No. 26 at 3-4.

The federal government is also not helpless. Mr. Jones allegedly shot at people while on supervised release for a prior § 922(g)(1) conviction. *See United States v. Jones*, No. 3:18-CR-116-CWR-LGI (S.D. Miss.). Revocation proceedings may be simpler and faster than a new § 922(g)(1) case.[2] In fact, "[b]ecause a revocation hearing is not a criminal prosecution, the full panoply of rights due a defendant in such a proceeding does not apply," including the Federal Rules of Evidence. *United States v. Williams*, 847 F.3d 251, 253 (5th Cir. 2017) (quotation marks and citation omitted); *see also* Fed. R. Evid. 1101(d)(3).

---

[2] Mr. Jones likely cannot set aside his prior § 922(g)(1) conviction; he pleaded guilty to the offense. *See United States v. Barnes*, 953 F.3d 383, 388 (5th Cir. 2020).

The federal government has put Mr. Jones' revocation proceedings on hold in favor of pursuing this new case. That is its choice. In so doing, though, it has opened the door to Mr. Jones' *Bruen* motion and then, at its peril, failed to present the arguments or history that *Bruen* requires.

The motion to dismiss is granted. The Clerk of Court shall close this case.

**SO ORDERED**, this the 8th day of January, 2024.

                                        s/ Carlton W. Reeves
                                        UNITED STATES DISTRICT JUDGE